THE LANE LAW FIRM, PLLC
Robert C. Lane
State Bar No. 24046263
notifications@lanelaw.com
6200 Savoy, Suite 1150
Houston, Texas 77036
(713) 595-8200 Voice
(713) 595-8201 Facsimile
COUNSEL FOR DEBTOR

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

IN RE: §
**FREDRICK LEE PRESS PLUMBING, LLC** §
**DEBTOR** §  **BANKRUPTCY CASE NO. 23-32662**

### DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION PURSUANT TO SECTION 1190 OF THE BANKRUPTCY CODE

TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

### ARTICLE I
### INTRODUCTION

### Identity of the Debtor

Fredrick Lee Press Plumbing, LLC ("Debtor") filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division on November 14, 2023. This Plan proposes to pay creditors from future income by continuing operations and reorganizing its current debts.

The Plan also states whether each class of claims or equity interest holders is impaired or unimpaired. After such plan has been filed, it must be accepted by holders of claims against, or interests in, the debtor, or be found by the Court to be fair and equitable with respect to each class of claims or interests.

1

EXHIBIT A

<u>**Explanation of Chapter 11**</u>

Chapter 11 is the primary reorganization chapter under the Code. Debtor is a small business and has decided to proceed under Subchapter V – Business Debtor Reorganization ("Subchapter V"). Under Subchapter V, the Debtor is permitted to reorganize its business for the benefit of its creditors, equity interest holders, and itself. As required by the Code, the Plan places claims in various classes and describes the treatment each class will receive. After such Plan has been filed, it must be accepted by claimholders and equity interest holders or determined by the Court to be fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the Plan.

<u>**Explanation of the Confirmation Process**</u>

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. As set forth above, a Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order to be confirmed by the Court.

Confirmation of the plan discharges the Debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

<u>**Voting Procedures**</u>

<u>**Unimpaired Class**</u>.  Claimants in Class 1, 2, 3 and 8 are not impaired under the Plan.  Such Classes are deemed to have accepted the Plan.

<u>**Impaired Class**</u>.  The Class 4, 5, 6 and 7 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor is seeking the acceptance of the Plan by Claimants in Class 4, 5, 6 and 7.  Each holder of an Allowed Claim in Class 4, 5, 6 and 7 may vote on the Plan by completing, dating, and signing the ballot sent to the holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Robert "Chip" Lane, The Lane Law Firm, PLLC, 6200 Savoy Drive, Suite 1150, Houston, Texas 77036 or via email at bk@lanelaw.com.  In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

2

## Summary of Plan

Debtor's Plan of Reorganization provides for the continued operations of the Debtor in order to make payments to its creditors as set forth in this Plan.  Debtor seeks to confirm a consensual plan or reorganization so that all payments to creditors required under the Plan will be made directly by the Debtor to its creditors.  Regardless, if the Debtor must seek confirmation of this Plan pursuant to § 1191(b), then the Debtor will likewise seek approval from the Court to act as the payment administrator under the Plan pursuant to § 1194(b).  Debtor asserts that it is in the creditors best interests for the Debtor to act as payment administrator under the Plan even if the Plan is confirmed pursuant to § 1191(b), as it will reduce administrative expenses, providing greater payout to general unsecured creditors.  Debtor asserts that cause exists for the Court to allow the Debtor to act as payment administrator even if confirmed pursuant to § 1191(b).

## Best Interests of Creditor Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.  If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors.  Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## ARTICLE II
## DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan which meaning shall be equally applicable to both the singular and plural forms of such terms.  Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.      **"Administrative Claim"** shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

3

2.  **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3.  **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4.  **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5.  **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6.  **"Case"** shall mean this Chapter 11 case.

4

7.     **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8.     **"Claimant"** shall mean the holder of a Claim.

9.     **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10.    **"Code"** shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11.    **"Confirmation"** or **"Confirmation of this Plan"** shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12.    **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming this Plan.

13.    **"Court"** shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14.    **"Creditor"** shall mean any person having a Claim against Debtor.

15.    **"Debt"** shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16.    **"Debtor"** shall mean Fredrick Lee Press Plumbing, LLC.

17.    **"Disbursing Agent"** shall mean the Reorganized Debtor or in the event of a confirmation under 11 U.S.C. §1191(b) shall mean the Sub-Chapter V Trustee or other entity or person as the Court mandates.

18.    **"Effective Date"** The effective date of this Plan is 30 days after the "Confirmation Date".

19.    **"Entity"** shall include Person, estate trust, governmental unit and the United States Trustee.

20.    **"Equity Interest Holders"** shall mean holders of the equity interests in the Debtors.

5

21.    **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

22.    **"Petition Date"** shall mean the date on which the Debtor filed this proceeding, November 14, 2023.

23.    **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

24.    **"Priority Claim"** shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

25.    **"Rejection Claim"** shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

26.    **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

27.    **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

28.    **"Sub-Chapter V Trustee"** shall be that person appointed under 11 U.S.C. §1183.

29.    **"Substantial Consummation"** shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.    **"Tax Claims"** shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.    **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE III
## REPRESENTATIONS

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS PLAN. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS PLAN SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS PLAN DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE IV
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

Fredrick Lee Press Plumbing, LLC ("Fredrick Lee Press" or "Debtor") started operations in 1996 and was became an LLC in 1999. The Debtor operates a service and repair plumbing company specializing in apartment communities in the DFW metro area business. Fredrick Lee Press had years of successful operations until November 2022 when the owners, Mr. Nathan Smith and his wife, Brandy, suffered a catastrophic car accident resulting in the loss of Mr. Smith's legs. Months were spent attempting to save his life and limbs, which unfortunately led to borrowing money from alternative funding lenders to keep the business operating. Fredrick Lee Press had to file bankruptcy due aggressive tactics of the multiple merchant cash advance companies that threatened to halt operations. These tactics and the resulting freeze of the business bank account by the merchant cash advance companies put an impossible strain on the finances of the company, including the withdrawal of funds and the inability to allow it to pay employees or operate.

### Future Income and Expenses Under the Plan

The Debtor filed this case on November 14, 2023, to seek protection from aggressive collection efforts by creditors that, if continued, would be to the detriment of other creditors by crippling business operations. Debtor proposes to pay allowed unsecured based on the liquidation analysis and cash available. Debtor anticipates having enough business and cash available to fund the plan and pay the creditors pursuant to the proposed plan. Attached hereto as Exhibit "A" are projections of gross income, expenses, and operating income for the next three years. It is anticipated that after confirmation, the Debtor will continue in business. Based upon the projections, the Debtor believes it can service the debt to the creditors.

### Post-Confirmation Management

The Debtor is currently owned 51% by Brandy Lee Smith and 49% by Nathan Smith. Mr. Smith will remain the president and representative of the Debtor going forward.

## ARTICLE V
## ANALYSIS AND VALUATION OF PROPERTY

The Debtor operates a service and repair plumbing company specializing in apartment communities in the DFW metro area business. To that end, the Debtor owns inventory, office furniture, vehicles and other machinery in order to operate its business. There are fully secured creditors as to this property based on the liquidation analysis and UCC filings. Any secured creditor not treated in this Plan as fully secured are therefore under secured.

A liquidation analysis of the Debtor's assets is attached hereto as Exhibit "B".

# ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will continue operating its business. The Debtor's Plan will break the existing claims into seven classes of Claimants. These claimants will receive cash repayments over a period of time beginning on the Effective Date. While Debtor's Plan proposes to pay claims not to exceed five (5) years, nothing prevents Debtor from prepaying its claims.

**Satisfaction of Claims and Debts:** The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VI of this Plan shall be the sole and exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities, and obligations for the implementation of this Plan.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and Subchapter V Trustee)** are unimpaired and will be paid in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to The Lane Law Firm, PLLC will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Subchapter V Trustee fees will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. The Debtor's case will not be closed until all allowed Administrative Claims are paid in full. Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $45,000.00. The Class 1 Claimants are not impaired under this Plan. All Fee Applications must be filed no later than 60 days after the effective date of the plan.

**Class 2 Claimants Priority Tax Claims (These claims are nonvoting/unimpaired)** Allowed Priority Claims are for estimated tax returns. These claims are secured and the amounts are based on estimated returns and will be paid on the effective date as to the actual amount owed. The following class contains Debtor's estimated tax priority claims for pre-petition estimated amounts and the proposed treatment under the Plan:

**2-1 Kaufman County ("Kaufman County"** pertains to the allowed secured claim of **Kaufman County** in the amount of **$2,199.65 (Claim No. 2-1).** Kaufman County's allowed secured claim in the amount of $2,199.65 shall be paid in full on or before the Effective Date. Post-petition statutory interest will accrue at the rate of twelve percent (12%) per annum from the Petition Date until the taxes are paid in full.

In the event the Reorganized Debtor sells, conveys or transfers any of the properties which are the collateral of the Kaufman County claim or post confirmation tax debt, the Reorganized Debtor shall remit such sales proceeds first to Tarrant to be applied to the Kaufman County tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to Kaufman County prior to any disbursement of the sale proceeds to any other person or entity.

9

The Reorganized Debtor may pre-pay the pre-petition tax debt to Kaufman County at any time. The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the Kaufman County's claim; otherwise, the Kaufman County claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim. Kaufman County shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2023 and subsequent tax years) owing to Kaufman County in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Kaufman County to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtor fail to make the payment as required in this Plan, Kaufman County shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtor's attorney advising of that default and providing the Reorganized Debtor with a period of five (5) calendar days to cure the default. In the event that the default is not cured within five (5) days, Frisco ISD may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, Kaufman County may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**2-2 Forney ISD ("Forney ISD"** pertains to the allowed secured claim of **Forney ISD** in the amount of **$4,558.53 (Claim No. 3-1).** Forney ISD's allowed secured claim in the amount of $4,558.53 shall be paid in full on or before the Effective Date. Post-petition statutory interest will accrue at the rate of twelve percent (12%) per annum from the Petition Date until the taxes are paid in full.

In the event the Reorganized Debtor sells, conveys or transfers any of the properties which are the collateral of the Forney ISD claim or post confirmation tax debt, the Reorganized Debtor shall remit such sales proceeds first to Forney ISD to be applied to the Forney ISD tax debt incident to any such property/tax account sold, conveyed or transferred and such proceeds shall be disbursed by the closing agent at the time of closing to Forney ISD prior to any disbursement of the sale proceeds to any other person or entity.

The Reorganized Debtor may pre-pay the pre-petition tax debt to Forney ISD at any time. The Reorganized Debtor shall have sixty (60) days from the Effective Date to object to the Forney ISD's claim; otherwise, the Forney ISD claim shall be deemed as an allowed secured claim in the amount of its Proof of Claim. Forney ISD shall retain its statutory lien securing its pre-petition and post-petition tax debts until such time as the tax debt is paid in full. Reorganized Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2023 and subsequent tax years) owing to Forney ISD in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Forney ISD to file an administrative expense claim and/or request for payment.

Should the Reorganized Debtor fail to make the payment as required in this Plan, Forney ISD shall provide written notice of that default by sending written notice by first class mail to Reorganized Debtor and Debtor's attorney advising of that default and providing the Reorganized Debtor with a period of five (5) calendar days to cure the default. In the event that the default is not cured within five (5) days, Dallas may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies available to it under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default. In the event of a second (2nd) default, Forney ISD may pursue all rights and remedies available to it under the Texas Property Tax Code in state district court without further order of this court or further notice to the Debtor.

**Class 3 Claimant** **Priority Tax Claims of the Texas Comptroller of Public Accounts and Texas Workforce Commission.** Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts and Texas Workforce Commission (collectively, the "Texas Taxing Authorities"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Taxing Authorities in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Texas Taxing Authorities to pursue any non-debtor third parties for tax debts or claims, and the Texas Taxing Authorities specifically opt out of any third party releases, if any; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Texas Taxing Authorities' administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Taxing Authorities, the interest rate shall be the statutory interest rate, currently 9.50% per annum; and (5) nothing provided in the Plan or Confirmation Order impacts the governmental claims bar date, and Texas Taxing Authorities may amend their claims at any point.

The Texas Taxing Authorities shall not be required to file any proof of claim, motion, or request for payment in order to be paid any Administrative Claims for taxes that arise or have arisen in the ordinary course of the Debtor's business, including all post-petition taxes incurred by the Debtor after the Petition Date. All Administrative Claims owed to the Texas Taxing Authorities shall be paid in full with applicable interest through the date payment is made on or before the Effective Date, or as otherwise agreed by the Texas Taxing Authorities. If any Administrative Claim owed to the Texas Taxing Authorities is not due on the Effective Date, then such Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law.

All priority tax claims owed to the Texas Taxing Authorities shall be paid in full either (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than forty-eight (48) months of the Debtor's bankruptcy petition date; or (3) as otherwise agreed to by the Texas Taxing Authorities. The Texas Taxing Authorities' priority tax claims shall accrue interest at the statutory rate of interest, currently 9.50% per annum, from the Plan's Effective Date until paid in full.

**3-1 Texas Comptroller of Public Accounts (Claim No. 41-1) (This claim is Unimpaired)** is for sales and use tax due and owing to the Comptroller based upon the returns filed by the Debtor for August – October 2023 and an audit for the periods of October 2018 – June 2023, in the amount of $52,987.35. Proof of Claim #41-1 shall be paid in full in equal monthly installments of principal and interest no later than sixty (60) months after the Debtor's bankruptcy petition date (being November 2028, or as otherwise agreed to by the Comptroller. Equal monthly installments of principal and interest at 9.50% per annum are to be paid beginning 30 days after the Effective Date and continue until paid in full. The monthly payment amounts for Proof of Claim #40-1 shall be at least $1,263.57.

**3-2 Texas Comptroller of Public Accounts (Claim No. 20-1) (This claim is Unimpaired)** is for franchise tax due and owing to the Comptroller based upon the return filed by the Debtor for the period of 2023, in the amount of $3,640.64. Proof of Claim #20-1 shall be paid in full in equal monthly installments of principal and interest no later than sixty (60) months after the Debtor's bankruptcy petition date (being November 2028, or as otherwise agreed to by the Comptroller. Equal monthly installments of principal and interest at 9.50% per annum are to be paid beginning 30 days after the Effective Date and continue until paid in full. The monthly payment amounts for Proof of Claim #20-1 shall be at least $91.47.

**3-3 Texas Workforce Commission (Claim No. 42-1) (This claim is Unimpaired)** is for taxable wages due and owing to the Texas Workforce Commission based upon estimates for the 4th Quarter 2023, in the amount of $1,502.93. Proof of Claim #42-1 shall be paid in full on the Effective Date of the Plan and the Debtor shall file the missing report on or before the Effective Date.

A failure by the Debtor or Reorganized Debtor to make a plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtor of Reorganized Debtor fails to cure an Event of Default as to an agency of the State of Texas within five (5) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this court.  The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured.

    **Class 4 Claimants** – **Secured Claims (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan.

    **4-1 Ally Bank (Claim No. 5-1)** claim in the amount of $80,342.85 is secured by 2023 Ford F-250 Super Duty Crew Cab Truck (Vin#9303).  Debtor proposes to pay the current value of the vehicle per Ally Bank's claim in the amount of $69,875.00 at 9.50% over 5 years in 60 equal monthly payments at $1,467.51 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $10,467.85 will be treated in Class 6 of this plan.

    **4-2 Ally Bank (Claim No. 17-1)** claim in the amount of $83,995.56 is secured by 2023 Ford F-250 Super Duty Crew Cab Truck (Vin#9304).  Debtor proposes to pay the current value of the vehicle per Ally Bank's claim in the amount of $69,875.00 at 9.50% over 5 years in 60 equal monthly payments at $1,467.51 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $14,120.56 will be treated in Class 6 of this plan.

    **4-3 Ford Motor Credit Company LLC (Claim No. 6-1)** claim in the amount of $12,855.55 is secured by 2019 Ford Transit Van (Vin#9387).  Debtor proposes to pay the claim of the vehicle in the amount of $12,855.55 at 9.50% over 5 years in 60 equal monthly payments at $266.99 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

    **4-4 Ford Motor Credit Company LLC (Claim No. 7-1)** claim in the amount of $10,484.08 is secured by 2019 Ford F-150 (Vin#3902). Debtor proposes to pay the claim of the vehicle in the amount of $10,484.08 at 9.50% over 5 years in 60 equal monthly payments at $220.19 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

    **4-5 Ford Motor Credit Company LLC (Claim No. 8-1)** claim in the amount of $35,907.21 is secured by 2020 Ford F550 (Vin#0901).  Debtor proposes to pay the claim of the vehicle in the amount of $35,907.21 at 9.50% over 5 years in 60 equal monthly payments at $754.12 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-6 Ford Motor Credit Company LLC (Claim No. 9-1)** claim in the amount of $42,727.94 is secured by 2020 Ford Transit Van (Vin#6178).  Debtor proposes to pay the claim of the vehicle in the amount of $42,727.94 at 9.50% over 5 years in 60 equal monthly payments at $897.37 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-7 Ford Motor Credit Company LLC (Claim No. 10-1)** claim in the amount of $37,402.13 is secured by 2022 Ford E350 (Vin#1006).  Debtor proposes to pay the claim of the vehicle in the amount of $37,402.13 at 9.50% over 5 years in 60 equal monthly payments at $785.51 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-8 Ford Motor Credit Company LLC (Claim No. 11-1)** claim in the amount of $37,479.68 is secured by 2022 Ford E350 (Vin#1007).  Debtor proposes to pay the claim of the vehicle in the amount of $37,479.68 at 9.50% over 5 years in 60 equal monthly payments at $787.14 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-9 Ford Motor Credit Company LLC (Claim No. 12-1)** claim in the amount of $55,244.08 is secured by 2022 Ford Explorer (Vin#7877).  Debtor proposes to pay the current value of the vehicle in the amount of $36,500.00 at 9.50% over 5 years in 60 equal monthly payments at $766.57 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $18,744.08 will be treated in Class 6 of this plan.

**4-10 Ford Motor Credit Company LLC (Claim No. 13-1)** claim in the amount of $206,277.75 is secured by 2023 Dodge Ram 5500 (Vin#5326).  Debtor proposes to pay the current value of the vehicle in the amount of $112,900.00 at 9.50% over 5 years in 60 equal monthly payments at $2,371.11 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $93,377.75 will be treated in Class 6 of this plan.

**4-11 Ford Motor Credit Company LLC (Claim No. 14-1)** claim in the amount of $206,085.47 is secured by 2022 Ford Super Duty F-550 DRW (Vin#9910). Debtor proposes to pay the current value of the vehicle in the amount of $112,900.00 at 9.50% over 5 years in 60 equal monthly payments at $2,371.11 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $93,185.47 will be treated in Class 6 of this plan.

**4-12 Ford Motor Credit Company LLC (Claim No. 15-1)** claim in the amount of $108,173.41 is secured by 2023 Ford F350 (Vin#9525). Debtor proposes to pay the current value of the vehicle in the amount of $97,989.00 at 9.50% over 5 years in 60 equal monthly payments at $2,057.95 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $10,184.41 will be treated in Class 6 of this plan.

**4-13 Ford Motor Credit Company LLC (No Claim Filed)** claim in the amount of $41,304.17 is secured by 2022 Ford Transit Van (Vin#3293). Debtor proposes to pay the claim of the vehicle in the amount of $41,304.17 at 9.50% over 5 years in 60 equal monthly payments at $872.52 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-14 Lincoln Automotive Financial Services (Claim No. 16-1)** claim in the amount of $41,317.36 is secured by 2022 Lincoln Corsair (Vin#3293). Debtor proposes to pay the current value of the vehicle in the amount of $36,500.00 at 9.50% over 5 years in 60 equal monthly payments at $766.57 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $4,817.36 will be treated in Class 6 of this plan.

**4-15 Mercedes-Benz Financial Services USA LLC (Claim No. 25-1)** claim in the amount of $43,493.13 is secured by 2022 Mercedes-Benz Sprinter Van (Vin#2038). Debtor proposes to pay the claim of the vehicle in the amount of $43,493.13 at 9.50% over 5 years in 60 equal monthly payments at $913.44 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-16 Mercedes-Benz Financial Services USA LLC (Claim No. 26-1)** claim in the amount of $35,963.45 is secured by 2022 Mercedes-Benz Sprinter Van (Vin#1107). Debtor proposes to pay the claim of the vehicle in the amount of $35,963.45 at 9.50% over 5 years in 60 equal monthly payments at $755.30 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-17 Mercedes-Benz Financial Services USA LLC (Claim No. 27-1)** claim in the amount of $47,535.60 is secured by 2022 Mercedes-Benz Sprinter Van (Vin#4364). Debtor proposes to pay the claim of the vehicle in the amount of $47,535.60 at 9.50% over 5 years in 60 equal monthly payments at $998.34 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-18 Mercedes-Benz Financial Services USA LLC (Claim No. 28-1)** claim in the amount of $38,757.46 is secured by 2022 Mercedes-Benz Sprinter Van (Vin#6146). Debtor proposes to pay the claim of the vehicle in the amount of $38,757.46 at 9.50% over 5 years in 60 equal monthly payments at $813.98 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-19 Mercedes-Benz Financial Services USA LLC (Claim No. 29-1)** claim in the amount of $47,975.94 is secured by 2022 Mercedes-Benz Sprinter Van (Vin#9537). Debtor proposes to pay the claim of the vehicle in the amount of $47,975.94 at 9.50% over 5 years in 60 equal monthly payments at $1,007.58 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-20 Mercedes-Benz Financial Services USA LLC (Claim No. 30-1)** claim in the amount of $191,937.23 is secured by 2021 Mercedes-Benz Maybach GLS (Vin#5007). Debtor proposes to pay the current value of the vehicle in the amount of $138,325.00 at 9.50% over 5 years in 60 equal monthly payments at $2,905.08 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $53,612.23 will be treated in Class 6 of this plan.

**4-21 Mercedes-Benz Financial Services USA LLC (Claim No. 31-1)** claim in the amount of $46,402.91 is secured by 2022 Mercedes-Benz Sprinter Van (Vin#2805). Debtor proposes to pay the claim of the vehicle in the amount of $46,402.91 at 9.50% over 5 years in 60 equal monthly payments at $974.55 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-22 Mercedes-Benz Financial Services USA LLC (Claim No. 32-1)** claim in the amount of $61,197.97 is secured by 2023 Mercedes-Benz Sprinter Van (Vin#2391). Debtor proposes to pay the claim of the vehicle in the amount of $61,197.97 at 9.50% over 5 years in 60 equal monthly payments at $1,285.27 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-23 Mercedes-Benz Financial Services USA LLC (Claim No. 33-1)** claim in the amount of $129,761.77 is secured by 2022 Mercedes-Benz Sprinter Van (Vin#1075). Debtor proposes to pay the current value of the vehicle in the amount of $84,250.00 at 9.50% over 5 years in 60 equal monthly payments at $1,769.41 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day. The remaining unsecured portion of the claim in the amount of $45,511.77 will be treated in Class 6 of this plan.

**4-24 Mercedes-Benz Financial Services USA LLC (Claim No. 35-1)** claim in the amount of $63,431.77 is secured by 2023 Mercedes-Benz Sprinter Van (Vin#2391). Debtor proposes to pay the claim of the vehicle in the amount of $63,431.77 at 9.50% over 5 years in 60 equal monthly payments at $1,332.19 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**4-25 Mercedes-Benz Financial Services USA LLC (Claim No. 36-1)** claim in the amount of $43,713.31 is secured by 2022 Mercedes-Benz Sprinter Van (Vin#5838). Debtor proposes to pay the claim of the vehicle in the amount of $43,713.31 at 9.50% over 5 years in 60 equal monthly payments at $918.06 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**Class 5 Claimants** – **Secured Claim of Fredrick Lee Press Plumbing, LLC (These claims are impaired)** Allowed Secured Claims are secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim the deficiency will be classified as a general unsecured claim. The following class contains Debtor's secured pre-petition claim and the proposed treatment under the Plan:

**5-1 Regions Bank (Claim No. 40-1)** filed a proof of claim in the secured amount of $43,456.38.  Regions Bank asserts it is fully secured by Fredrick Lee Press Plumbing, LLC's business property pursuant to a UCC Lien that was recorded on February 16, 2018 which puts this claim in Lien Position 1.  Therefore, Regions Bank is fully secured due to the liquidation analysis as to the assets of Fredrick Lee Press Plumbing, LLC on the plan filing date.  Debtor proposes to pay the secured claim of Regions Bank's claim in the amount of $43,456.38 at 9.50% over 60 equal monthly payments at $912.66 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**5-2 U.S. Small Business Administration ("SBA") (Claim No. 1-1)** filed a proof of claim in the secured amount of $519,241.39.  The SBA asserts it is fully secured by Fredrick Lee Press Plumbing, LLC's business property pursuant to a UCC Lien that was recorded on May 14, 2020 which puts this claim in Lien Position 2.  Therefore, the SBA is fully secured due to the liquidation analysis as to the assets of Fredrick Lee Press Plumbing, LLC on the plan filing date.  Debtor proposes to pay the secured claim of the SBA's claim in the amount of $519,241.39 at 3.75% over 60 equal monthly payments at $9,504.15 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.

**5-3 Newtek Small Business Finance, LLC (Claim No. 24-1)** filed a proof of claim in the secured amount of $1,973,212.69.  Newtek asserts it is fully secured by Fredrick Lee Press Plumbing, LLC's business property pursuant to a UCC Lien that was recorded on November 3, 2022 which puts this claim in Lien Position 3.  Therefore, the Newtek is partially secured due to the liquidation analysis as to the assets of Fredrick Lee Press Plumbing, LLC on the plan filing date.  Debtor proposes to pay the secured claim of Newtek's claim in the amount of $502,747.92 at 9.50% over 60 equal monthly payments at $10,558.64 per month. The first monthly payment on the secured claim amount will be due and payable 30 days after the effective date, unless this date falls on a weekend or federal holiday, in which case the payment will be due on the next business day.  The remaining unsecured portion of the claim in the amount of $1,470,464.77 will be treated in Class 6 of this plan.

**5-4 Samson MCA LLC (Claim No. 4-1)** filed a proof of claim in the secured amount of $479,023.63.  Samson asserts it is fully secured by Fredrick Lee Press Plumbing, LLC's business property pursuant to a UCC Lien that was recorded in March 2023 which puts this claim in Lien Position 4.  Therefore, Samson is under secured due to the liquidation analysis as to the assets of Fredrick Lee Press Plumbing, LLC on the plan filing date.  Therefore, the Samson MCA LLC is undersecured and will be treated in Class 6 of this Plan.

**5-5 Fox Capital Group, Inc. (Claim No. 39-1)** filed a proof of claim in the secured amount of $49,452.06.  Fox Capital Group asserts it is fully secured by Fredrick Lee Press Plumbing, LLC's business property pursuant to a UCC Lien that was recorded on May 1, 2023 which puts this claim in Lien Position 5.  Therefore, the Fox Capital Group is undersecured and will be treated in Class 6 of this Plan.

**5-6 BizFund, LLC (Claim No. 22-1)** filed a proof of claim in the secured amount of $70,896.00.  BizFund asserts it is fully secured by Fredrick Lee Press Plumbing, LLC's business property pursuant to a UCC Lien that was recorded on May 2, 2023 which puts this claim in Lien Position 6.  Therefore, the BizFund, LLC claim is undersecured and will be treated in Class 6 of this Plan.

**5-7 Swift Funding Source, Inc. (Claim No. 38-1)** filed a proof of claim in the secured amount of $15,217.50.  Swift Funding asserts it is fully secured by Fredrick Lee Press Plumbing, LLC's business property pursuant to a UCC Lien that was recorded on June 27, 2023 which puts this claim in Lien Position 7.  Therefore, the Swift Funding Source claim is undersecured and will be treated in Class 6 of this Plan

**Class 6 Claimants -- (Allowed Impaired Unsecured Claims)** are impaired and shall be satisfied as follows: All allowed unsecured creditors shall receive a pro rata distribution at zero percent per annum over the next five (5) years beginning not later than 60 days after the effective date of the plan on a quarterly basis. Debtor will distribute up to $610,000.00 to the general allowed unsecured creditor pool over the 5-year (5) year term of the plan in accordance with Exhibit "A" (5-year projections). The Debtor's General Allowed Unsecured Claimants will receive 22.25% of their allowed claims under this plan. Any creditors listed in the schedules of Fredrick Lee Press Plumbing, LLC as disputed that did not file a claim will not receive distributions under this plan. See below table for breakdown of distributions of the General Allowed Unsecured Claims:

| Allowed General Unsecured Claim Creditors | Total of Claim | Total to be Paid during the 4-year Plan at 22.25% of Total Claim |
|---|---|---|
| | | |
| Ally Bank (5-1) | $10,467.85 | $2,329.03 |
| Ally Bank (17-1) | $14,120.56 | $3,141.73 |
| AMEX (21-1) | $89,592.94 | $19,933.85 |
| BizFund (22-1) | $70,896.00 | $15,773.90 |
| Cellco/Verizon (23-1) | $4,270.00 | $950.05 |
| Ford Motor (12-1) | $18,744.08 | $4,170.44 |
| Ford Motor (13-1) | $93,377.75 | $20,775.95 |
| Ford Motor (14-1) | $93,185.47 | $20,733.17 |
| Ford Motor (15-1) | $10,184.41 | $2,265.97 |
| Fox Capital (22-1) | $49,452.06 | $11,002.76 |
| Lincoln (16-1) | $4,817.36 | $1,071.83 |
| MercedesBenz (30-1) | $53,612.23 | $11,928.38 |
| MercedesBenz (33-1) | $45,511.77 | $10,126.08 |
| Newtek (24-1) | $1,470,464.77 | $327,168.94 |
| Samson MCA (4-1) | $479,023.63 | $106,579.67 |
| Swift Funding (38-1) | $15,217.50 | $3,385.80 |
| Zahav Asset (18-1) | $218,714.00 | $48,662.46 |
| | | |
| Totals: | $2,741,652.38 | $610,000.00 |

**\*\*Reservation of rights/non-waiver of claims\*\*** If any creditor has not filed a proof of claim, Fredrick Lee Press Service Company Inc. reserves it rights to continue to dispute any claim and its rights to change the treatment of those claims after the proof of claim bar date. Additionally, the Debtor is still investigating possible litigation, including preference actions for payments made in the 90-days before filing and/or declarations of possible usury violations. By identifying payments in the foregoing table, the Debtor is in no way waiving its rights to file litigation or seek other declaration as to the amount and validity of such debts.

**Class 7 – Pre-Petition Lease Admin Claim** - The Pre-Petition Admin Lease Claim of DeLaura Press in the amount of $144,000.00 shall be paid directly to **Newtek Small Business Finance, LLC (Claim No. 24-1)** as payments for its assignment of rents in the deed of trust. Newtek shall receive these payments over sixty (60) equal monthly payments at 0% per annum. The monthly payments shall be $2,400.00.

**Class 8 Equity Interest Holders (Current Owner)** are not impaired under the Plan and shall be satisfied as follows: The current owner will receive no payments under the Plan; however, they will be allowed to retain their ownership in the Debtor. Class 7 Claimants are not impaired under the Plan.

## ARTICLE VII
## CLAIMS OBJECTION PROCESS

**Claims Bar Date.**

The Bar Date for all creditors or interest holders, other than governmental units, to file proofs of claim with the Bankruptcy Clerk was January 23, 2024. The Bar Date for governmental units to file Proofs of Claim with the Bankruptcy Clerk was not later than 180 days from petition date.

**Effect of Bar Date.**

In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

**Standing.**

Following the Effective Date, the Debtor shall have standing to object to Claims.

**Objection Deadline.**

Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may File with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date.

**Allowance of Claims.**

At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

## ARTICLE VIII
## EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

A.  Effective Date and Notice.

The Effective Date of the Plan is the first business day following the date that is 30 days after the entry of the order confirming the Plan becomes final and non-appealable; provided however, if an appeal of the order confirming the Plan has been taken and a stay of confirmation pending appeal in effect, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

On or before ten (10) Business Days after the occurrence of the Effective Date, the Debtors shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; and (c) such other matters that Debtors deems appropriate.

B.  Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is  Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

C.  Vesting of Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first.  Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

    D.    <u>Discharge</u>.

        1.    <u>Consensual Plan</u>

A consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraph (15), but including having all classes of creditors entitled to vote to accept the Plan. If Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. Debtors will not be discharged from any debt imposed by this Plan.

        2.    <u>Non-consensual Plan</u>

A non-consensual plan is one in which the debtor has met all requirements of § 1129(a) of the Bankruptcy Code except for paragraphs (8), (10), and (15) of section 1129. In the event Debtor is unable to get all impaired classes of creditors to vote in favor of the Plan, Debtor will seek for the Court to confirm the Plan pursuant to § 1191(b) of the Bankruptcy Code. If Debtor's Plan is confirmed under § 1191(b), Debtor will receive a discharge by the Court upon completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. Debtor will not be discharged from any debt: (a) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (b) expected from discharge under § 523 (a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

    E.    <u>Injunction Against Interference with Plan</u>.

Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined  from taking any action to interfere with the implementation or consummation of the  Plan against the Debtor. Additionally, all holders of Claims, all holders of Equity Interest, and all other parties in interest in the Bankruptcy Case shall be enjoined from  seeking payment on their Claims or Interest except as otherwise provided in the Plan from Debtor.

F.      Payments under the Plan.

Regardless if the Debtor confirms the Plan pursuant to § 1191(a) or (b) of the Bankruptcy Code, Debtor shall make all payments required under the Plan directly to the creditors of the Estate once the creditors' claim becomes an Allowed Claim. Debtor asserts that cause exists to allow the Debtor to make all Plan payments as this will reduce administrative costs and provide assurance the Debtor is better able to monitor and maintain its cash flows.

### ARTICLE IX
### MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the continued operations of the business to fund the Plan.

### ARTICLE X
### FEASIBILITY OF PLAN

The projections of the future business operations are attached hereto as Exhibit "A". The Debtor believes that the projections are accurate based upon the accounts receivable and the work currently on the books. Based upon the projections, the Debtor believes the Plan to be feasible.

### ARTICLE XI
### RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(i)      to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan;

(ii)     to rule on any modification of the Plan proposed under section 1193;

(iii)    to hear and allow all applications for compensation to professionals and other Administrative Expenses and enter final orders;

(iv)     to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and

(iv)     to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

24

## ARTICLE XII
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $45,000.00 in administrative claims. Claims to the administrative creditors must be paid prior to the unsecured creditors receiving any payment. The amount owed to the unsecured creditors is approximately $2,741,652.38. The Debtor's assets include funds in the bank, accounts receivables, office furniture, vehicles and inventory. Administrative creditors must be paid before unsecured debts, and therefore, a liquidation would result in a smaller distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "B".

## ARTICLE XIII
## STATUS OF EXECUTORY CONTRACTS AND LEASES

All unexpired leases and executory contracts shall be assumed on or before the Effective Date. To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan or Court Order prior to the Effective Date, they are rejected.

## ARTICLE XIV
## EVENTS OF DEFAULT AND EFFECT THEREOF

Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days after mailing written notice of default from such creditor to the Reorganized Debtor. Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Robert "Chip" Lane
The Lane Law Firm
6200 Savoy Drive
Suite 1150
Houston, Texas 77036-3300

The Debtor will be entitled to no more than two (2) notices of default during the term of the Plan from any creditor. Upon a third default to that creditor, the automatic stay as to that creditor shall be automatically terminated without further notice or order from the Court.

## ARTICLE XV
## DISCHARGE

Upon Confirmation pursuant to 11 U.S.C. §1191(a) to the extent that a Claim or Debt has been dealt with under this Plan, such Claim or Debt will be discharged. Upon confirmation pursuant to 11 U.S.C. § 1191(b) discharge shall occur upon completion of all payments required under this Plan.

The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE XVI
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan. The Plan contemplates that there will be excess funds to pay Creditor Claims.

Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against either Debtor that arose prior to the Confirmation Date, unless such action is authorized by this Plan or 11 U.S.C. § 1141.

## ARTICLE XVII
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS.**

# ARTICLE XVIII
## PENDING OR ANTICIPATED LITIGATION

      The Debtor has not yet completed its investigation with regard to prepetition transactions. The Debtor anticipates completing its investigation by April 30, 2024. If you received a payment or other transfer of property within 90 days of bankruptcy, the Debtor may seek to avoid such transfer.
.

      Dated: April 3, 2024

                  Respectfully submitted,

                  Fredrick Lee Press Plumbing, LLC

                  By: */s/Nathan Smith*
                  Nathan Smith, Owner

| Ordinary Income/Expense | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Total Revenue | $4,084,800.00 | $4,166,496.00 | $4,249,825.92 | $4,334,822.44 | $4,421,518.89 |
| | | | | | |
| **Expenses** | | | | | |
| Employee Payroll(W-2) | $1,040,000.00 | $1,060,800.00 | $1,082,016.00 | $1,103,656.32 | $1,125,729.45 |
| Contractor Services(1099) | $150,000.00 | $153,000.00 | $156,060.00 | $159,181.20 | $162,364.82 |
| Owner Draw | $350,000.00 | $357,000.00 | $364,140.00 | $371,422.80 | $378,851.26 |
| Payroll Taxes | $312,000.00 | $318,240.00 | $324,604.80 | $331,096.90 | $337,718.83 |
| Office Rent/Lease | $144,000.00 | $144,000.00 | $144,000.00 | $144,000.00 | $144,000.00 |
| Utilities (Electricity and Water) | $8,400.00 | $8,568.00 | $8,739.36 | $8,914.15 | $9,092.43 |
| Inventory Purchases | $665,000.00 | $678,300.00 | $691,866.00 | $705,703.32 | $719,817.39 |
| Vehicle Expenses (gas & maintenance) | $237,000.00 | $241,740.00 | $246,574.80 | $251,506.30 | $256,536.42 |
| Insurance (Auto, Gen Liability & Workers Comp) | $265,000.00 | $270,300.00 | $275,706.00 | $281,220.12 | $286,844.52 |
| Telephone and Internet | $30,000.00 | $30,600.00 | $31,212.00 | $31,836.24 | $32,472.96 |
| CPA | $18,500.00 | $18,870.00 | $19,247.40 | $19,632.35 | $20,024.99 |
| Office Supplies | $15,000.00 | $15,300.00 | $15,606.00 | $15,918.12 | $16,236.48 |
| Equipment Rental | $6,000.00 | $6,120.00 | $6,242.40 | $6,367.25 | $6,494.59 |
| Business Travel, Meals, Entertainment | $35,000.00 | $35,700.00 | $36,414.00 | $37,142.28 | $37,885.13 |
| Misc Expenses | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 | $72,000.00 |
| | | | | | |
| **Total Expense** | ($3,347,900.00) | ($3,410,538.00) | ($3,474,428.76) | ($3,539,597.34) | ($3,606,069.28) |
| **Net Operating Income** | $736,900.00 | $755,958.00 | $775,397.16 | $795,225.10 | $815,449.61 |

| PLAN PAYMENTS | | | | | |
|---|---|---|---|---|---|
| Claim | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 |
| **Priority Claims** | | | | | |
| Kaufman County | $2,199.65 | | | | |
| Forney ISD | $4,558.53 | | | | |
| Texas Comptroller Claims 20 & 40 (POC Amendment) | $16,260.48 | $16,260.48 | $16,260.48 | $16,260.48 | $16,260.48 |
| Texas Workforce Commission | $1,502.93 | | | | |
| DeLaura Press Landlord | $28,800.00 | $28,800.00 | $28,800.00 | $28,800.00 | $28,800.00 |
| | | | | | |
| **Secured Claims** | | | | | |
| Ally Bank (5-1) | $17,610.12 | $17,610.12 | $17,610.12 | $17,610.12 | $17,610.12 |
| Ally Bank (17-1) | $17,610.12 | $17,610.12 | $17,610.12 | $17,610.12 | $17,610.12 |
| Ford Motor (6-1) | $3,203.88 | $3,203.88 | $3,203.88 | $3,203.88 | $3,203.88 |
| Ford Motor (7-1) | $2,642.28 | $2,642.28 | $2,642.28 | $2,642.28 | $2,642.28 |
| Ford Motor (8-1) | $9,049.44 | $9,049.44 | $9,049.44 | $9,049.44 | $9,049.44 |
| Ford Motor (9-1) | $10,768.44 | $10,768.44 | $10,768.44 | $10,768.44 | $10,768.44 |
| Ford Motor (10-1) | $9,426.12 | $9,426.12 | $9,426.12 | $9,426.12 | $9,426.12 |
| Ford Motor (11-1) | $9,445.68 | $9,445.68 | $9,445.68 | $9,445.68 | $9,445.68 |
| Ford Motor (12-1) | $9,198.84 | $9,198.84 | $9,198.84 | $9,198.84 | $9,198.84 |
| Ford Motor (13-1) | $28,453.32 | $28,453.32 | $28,453.32 | $28,453.32 | $28,453.32 |
| Ford Motor (14-1) | $28,453.32 | $28,453.32 | $28,453.32 | $28,453.32 | $28,453.32 |
| Ford Motor (15-1) | $24,695.40 | $24,695.40 | $24,695.40 | $24,695.40 | $24,695.40 |
| Ford Motor | $10,470.24 | $10,470.24 | $10,470.24 | $10,470.24 | $10,470.24 |
| Lincoln Motors (16-1) | $9,198.84 | $9,198.84 | $9,198.84 | $9,198.84 | $9,198.84 |
| MB (25-1) | $10,961.28 | $10,961.28 | $10,961.28 | $10,961.28 | $10,961.28 |
| MB (26-1) | $9,063.60 | $9,063.60 | $9,063.60 | $9,063.60 | $9,063.60 |
| MB (27-1) | $11,980.08 | $11,980.08 | $11,980.08 | $11,980.08 | $11,980.08 |
| MB (28-1) | $9,767.76 | $9,767.76 | $9,767.76 | $9,767.76 | $9,767.76 |
| MB (29-1) | $12,090.96 | $12,090.96 | $12,090.96 | $12,090.96 | $12,090.96 |
| MB (30-1) | $34,860.96 | $34,860.96 | $34,860.96 | $34,860.96 | $34,860.96 |
| MB (31-1) | $11,694.60 | $11,694.60 | $11,694.60 | $11,694.60 | $11,694.60 |
| MB (32-1) | $15,423.24 | $15,423.24 | $15,423.24 | $15,423.24 | $15,423.24 |
| MB (33-1) | $21,232.92 | $21,232.92 | $21,232.92 | $21,232.92 | $21,232.92 |
| MB (35-1) | $15,986.28 | $15,986.28 | $15,986.28 | $15,986.28 | $15,986.28 |
| MB (36-1) | $11,016.72 | $11,016.72 | $11,016.72 | $11,016.72 | $11,016.72 |
| Regions Bank (40-1) | $10,951.92 | $10,951.92 | $10,951.92 | $10,951.92 | $10,951.92 |
| SBA (1-1) | $114,049.80 | $114,049.80 | $114,049.80 | $114,049.80 | $114,049.80 |
| NewTek (24-1) | $126,703.68 | $126,703.68 | $126,703.68 | $126,703.68 | $126,703.68 |
| | | | | | |
| **Allowed General Unsecured Claims** | | | | | |
| | | | | | |
| Usnecured to Receive 22.25% | $77,000.00 | $104,000.00 | $123,000.00 | $143,000.00 | $163,000.00 |
| | | | | | |
| **Annual Plan Payment** | $736,331.43 | $755,070.32 | $774,070.32 | $794,070.32 | $814,070.32 |
| | | | | | |
| **Total Remaining After Plan Payments** | $568.57 | $887.68 | $1,326.84 | $1,154.78 | $1,379.29 |

EXHIBIT A

| Asset | Gross Value on Petition Date | Current Gross Value | Asset Debts | Net Value | Lienholder |
|---|---|---|---|---|---|
| Cash | $7,090.00 | $66,724.73 | | $66,724.73 | |
| Accounts Receivable | $732,060.00 | $924,182.00 | | $924,182.00 | |
| Inventory | $12,000.00 | $16,500.00 | | $16,500.00 | |
| **OFFICE FURNITURE/FIXTURES** | | | | | |
| Desks, Chairs, Computers, Monitors, Filing Cabinets, Tables, Phones and Copiers | $4,300.00 | $4,300.00 | $0.00 | $4,300.00 | |
| **EQUIPMENT AND VEHICLES** | | | | | |
| 2023 Ford F-250 (VIN# 9303) | $69,875.00 | $66,785.00 | $80,342.85 | $0.00 | Ally Bank |
| 2023 Ford F-250 (VIN# 9304) | $69,875.00 | $69,875.00 | $83,995.56 | $0.00 | Ally Bank |
| 2019 Ford Transit Van (VIN#9387) | $23,500.00 | $23,500.00 | $12,855.55 | $10,644.45 | Ford Motor |
| 2019 Ford F-150 (VIN# 3902) | $21,000.00 | $21,000.00 | $10,484.08 | $10,515.92 | Ford Motor |
| 2020 Ford F550 (VIN# 0901) | $55,000.00 | $55,000.00 | $35,907.21 | $19,092.79 | Ford Motor |
| 2020 Ford Transit Van (VIN# 6178) | $40,180.00 | $40,180.00 | $42,712.94 | $0.00 | Ford Motor |
| 2022 Ford E350 (VIN# 1006) | $37,950.00 | $37,950.00 | $37,402.13 | $547.87 | Ford Motor |
| 2022 Ford E350 (VIN# 1007) | $37,950.00 | $37,950.00 | $37,479.68 | $470.32 | Ford Motor |
| 2020 Ford Explorer (VIN# 7877) | $36,500.00 | $36,500.00 | $55,244.08 | $0.00 | Ford Motor |
| 2018 Dodge Ram 5500 (VIN# 5326) | $112,900.00 | $112,900.00 | $206,277.75 | $0.00 | Ford Motor |
| 2020 Ford Super Duty F-550 (VIN# 9910) | $112,900.00 | $112,900.00 | $206,085.47 | $0.00 | Ford Motor |
| 2018 Ford F350 (VIN# 9525) | $97,989.00 | $97,989.00 | $108,173.41 | $0.00 | Ford Motor |
| 2020 Lincoln Corsair (VIN# 3293) | $36,500.00 | $36,500.00 | $41,317.36 | $0.00 | Ford Motor |
| 2025 MB Sprinter Van (VIN# 2038) | $41,800.00 | $41,800.00 | $43,493.13 | $0.00 | MB |
| 2025 MB Sprinter Van (VIN# 1107) | $41,800.00 | $41,800.00 | $35,963.45 | $5,836.55 | MB |
| 2020 MB Sprinter Van (VIN# 6146) | $41,800.00 | $41,800.00 | $47,533.60 | $0.00 | MB |
| 2020 MB Sprinter Van (VIN# 4364) | $41,800.00 | $41,800.00 | $38,757.46 | $3,042.54 | MB |
| 2022 MB Sprinter Van (VIN# 9537) | $41,800.00 | $41,800.00 | $47,975.94 | $0.00 | MB |
| 2021 MB Sprinter Van (VIN# 5007) | $138,325.00 | $138,325.00 | $193,197.23 | $0.00 | MB |
| 2021 MB Sprinter Van (VIN# 2605) | $41,800.00 | $41,800.00 | $48,402.31 | $0.00 | MB |
| 2019 MB Sprinter Van (VIN# 2391) | $43,850.00 | $43,850.00 | $61,197.97 | $0.00 | MB |
| 2020 MB Sprinter Van (VIN# 1075) | $84,250.00 | $84,250.00 | $129,761.77 | $0.00 | MB |
| 2018 MB Sprinter Van (VIN# 2391) | $42,350.00 | $42,350.00 | $63,431.17 | $0.00 | MB |
| 2019 Ford Transit Van (VIN# 3293) | $44,800.00 | $44,800.00 | $41,304.17 | $3,495.83 | Ford Motor |
| 2018 MB Sprinter Van (VIN# 5838) | $43,850.00 | $43,850.00 | $43,713.31 | $136.69 | MB |
| | $2,155,750.00 | $2,411,916.73 | $3,749,767.78 | $1,065,445.69 | |
| **INTERNET DOMAINS** | | | | | |
| Internet Domain | $1.00 | $1.00 | | $1.00 | |

| Secured Claim | | |
|---|---|---|
| CT Bank (40-1) | $43,455.38 | $1,021,989.31 |
| CT Bank (40-1) | $519,241.39 | $502,747.92 |
| Wynk Small Business (24-1) | $1,973,212.69 | $0.00 |
| Samson MCA LLC (4-1) | $479,023.63 | $0.00 |
| Fox Capital Group (39-1) | $49,452.06 | $0.00 |
| BizFund (12-1) | $70,896.00 | $0.00 |
| Swift Funding Source (38-1) | $15,217.50 | $0.00 |

| | Net Value |
|---|---|
| Remaining Amount Available for Unsecured Creditors | $0.00 |
| Total Amount of Allowed General Unsecured Claims (includes the undersecured portions of the Schedule D secured creditor) | $2,741,652.38 |